**Harry GREGSON for himself and as personal representative of the estate of Ashley Marie Gregson; and Saundra Marie (Tillotson) Gregson, for herself and as mother of Ashley Marie Gregson, Petitioners,**

v.

**SECRETARY OF THE DEPT. OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 88–1V.

United States Claims Court.

May 16, 1989.

Anthony M. Colantoni, Chicago, Ill., with whom were Michael R. Hugo, Boston, Mass., Herbert A. Rosenthal, Washington, D.C., Anthony C. Roth, Washington, D.C., Edward P. Rudolph, Elm Grove, Wis., Clifford Shoemaker, Vienna, Va., and Curtis R. Webb, Twin Falls, Idaho, for petitioners.

Deputy Asst. Atty. Gen., Stuart E. Schiffer, with whom were, John L. Euler and Charles R. Gross, for respondent.

## OPINION AND ORDER

SMITH, Chief Judge.

This case is before the court on respondent's Motion to Suspend Proceedings for 90 days in this case and in all other cases filed in the court under the National Vaccine Injury Compensation Program (hereinafter the Vaccine Act or Act). 42 U.S.C. § 300aa–10 *et seq.* (1988). Respondent's motion also informs the court of respondent's intention to limit participation by counsel to "such action as is contemplated by 42 U.S.C. § 300aa–12(d)(1)."

The court conducted a hearing on this matter on May 5, 1989, during which respondent's counsel appeared and argued in support of its motion. The court also invited all petitioners' counsel to attend and participate in the hearing. Seven petitioners' counsel, appearing on behalf of nearly 20 other petitioners' counsel, together representing over 60 petitioners, argued against the granting of respondent's motion.

After hearing argument on the motion and considering the extraordinary nature of respondent's request, the court denied respondent's motion for two weeks through May 19, 1989, to give the court time to consider and issue a final written ruling.

After considering the respective arguments of the parties and for the reasons set forth below, the court denies respondent's motion. In addition, as set forth on pages 15–16, *infra,* respondent's counsel is ordered to clarify its role as counsel in these cases before the court.

### Background

The Vaccine Act created a new system for providing compensation for injuries or deaths resulting from vaccines routinely administered to children. *See* § 300aa–10(a). Under the compensation system, petitioners are entitled to an award if it is proven that petitioner developed specified symptoms or reactions to a vaccine within specified periods of time and subsequently suffered a vaccine-related injury for at least six-months or petitioner's child died from the administration of the vaccine. § 300aa–13(a)(1)(A). Upon petitioner's adequate showing, compensation will be awarded subject only to respondent proving an alternative cause of the injury. § 300aa–13(a)(1)(B).

The Vaccine Act classifies cases as prospective and retroactive, depending on whether the vaccine was administered after or before October 1, 1988, the effective date of the Vaccine Act. All individuals injured by a vaccine administered after October 1, 1988, seeking more than $1,000 in damages are required to exhaust their available remedies under the Vaccine Act before pursuing other civil remedies. § 300aa–11(a)(2)(A). On the other hand, the filing of a retroactive case is optional. Retroactive cases may consist of claims that were never pursued through litigation, civil actions that were denied or dismissed with prejudice, or cases presently pending in state or federal court where the petitioner elects to withdraw such action without prejudice and file under the Act. *See* § 300aa–11(a).

Following the receipt of a petition under the Act, the court is required to designate a special master to carry out certain functions. § 300aa–12(c). The special master, serving as an adjunct to the court, may

require the submission of such information, the production of any document and the testimony of any person as may be reasonable and necessary to determine if compensation is warranted. § 300aa–12(c)(2). The special master may conduct such hearings as may be appropriate in gathering the necessary evidence. *Id.* In recommending a decision on the appropriateness of compensation, the special master may prepare and submit to the court proposed findings of fact and conclusions of law. *Id.*

After the filing of the special master's recommended decision and upon objection of the parties, or upon the court's own motion, the court is to review the special master's decision. § 300aa–12(d)(1). The court may remand for further proceedings, adopt the proposed findings of fact and conclusions of law and render judgment thereon, or make a *de novo* determination of any matter and issue its judgment accordingly. In any event, the court is to render its judgment within 365 days after the filing of the petition. § 300aa–12(d)(3).

Upon entry of judgment by the Claims Court, petitioner must then elect to accept or reject the court's judgment. § 300aa–21(a). Acceptance of the court's judgment bars any future action against the vaccine manufacturer for the vaccine-related injury or death. *Id.* If the petitioner rejects the court's judgment, the petitioner may pursue a common law tort action in state or federal court. *Id.*

### Issues Presented

Respondent's argument on behalf of its motion was essentially that the combination of the Vaccine Act's 365–day decision requirement, the lack of sufficient resources (mainly the number of attorneys and doctors at the Department of Justice and the Department of Health and Human Services) and the court's procedures for handling the vaccine cases have created a system of competing pressures which threaten to cause the program to grind to a halt. Respondent stated that now is an appropriate time to stop and examine how

the system is working since all parties concerned have several months of experience with the program and no prospective cases have yet been filed under the Act.

While respondent stated that a confluence of three specific problems has given rise to a larger and more general problem, respondent's argument focused mainly on the manner in which the court is processing the vaccine cases. Respondent repeatedly referred to "complex traditional litigation" to describe the court's method of handling the cases. For support of this characterization, respondent referenced detailed discovery orders with short court imposed time-frames for dealing with the orders, a "regimen of daily status conferences", and new assignments flowing from the status conferences. Transcript of May 5, 1989, Hearing on Respondent's Motion to Suspend Proceedings, pp. 14–15 (hereinafter Tr. at ——)[1]. These preliminary events then lead to the decisive hearing stage where, respondent stated, detailed prehearing orders are issued which:

set a prehearing conference seven [to] ten days before the hearing requiring counsel to provide memoranda of law and fact with legal authority, a witness list very explicit with summaries of the witnesses, an exhibit list with separate statements of what each exhibit is going to contain; a separate and joint memorandum of stipulations divided into two parts, the first part what we could stipulate to, the second part what we cannot, but in a very detailed way [and a] joint statement setting forth the issues of fact and issues of law in sufficient detail to enable the Court to resolve the case in its entirety by addressing each of the issues listed.

Tr. at 15. Respondent averred that the Vaccine Act did not contemplate the use of such detailed procedures but instead envisioned a more streamlined approach to the handling of the vaccine cases.

Petitioners' view of the current system was one in sharp contrast to that of respondent. The seven petitioners' counsel ad-

---

1. The transcript of the hearing is filed in *Gregson v. Secretary of the Dept. of Health and Hu-* *man Services,* No. 88–1V.

vanced separate but similar arguments against respondent's suspension motion[2]. Although agreeing that the time-frames are extremely tight, petitioners argued that the court's use of status conferences is necessary and useful, that the discovery orders are somewhat unnecessary *due to respondent's requests not the court's orders,* and that the one hearing held to date was successfully conducted.

Petitioners argued that respondent's problems are not the result of the court's procedures, but instead a lack of respondent's resources and respondent's overly strict view of the proof necessary to be awarded compensation. With regard to respondent's resource problem, petitioners argued that respondent was on notice for several years that vaccine cases would be filed under this system and yet failed to prepare to handle them. Petitioners contended that respondent should either shift resources internally or seek to involve others, such as the various United States Attorneys Offices or the Department of Health and Human Services General Counsel's Office, in processing these cases.

Petitioners contended that, from the viewpoint of their individual cases, some of those cases should have been settled were it not for respondent's overly strict interpretation of the proof necessary for compensation. This failure to settle these and like cases will only clog the system and put additional pressures on all parties involved in handling these cases.

In summary, petitioners argued that the wholesale suspension of all vaccine cases, especially those cases where liability has been conceded, is unnecessary and would be unfair to the individual petitioners. *See* Tr. at 41, 67. Petitioners raised the concern that those petitioners entitled to compensation will have to wait through the suspension period before receiving any compensation. Tr. at 42, 114. As well, petitioners raised the questions of how the suspension period will be treated *vis-a-vis*

the statutory 365–day decision period, tr. at 67, whether the Act's statute of limitations provisions would be affected by the suspension period, *id.,* and whether such delay will risk the availability of relevant evidence. *Id.*

Respondent, however, stated that if the suspension was granted, respondent would continue to work with counsel in those cases where liability was conceded and, therefore, compensation would be forthcoming to the prevailing petitioner. Tr. at 43. But, respondent believed that a suspension of all cases was still necessary since a vacation of the suspension order could be sought on a case-by-case basis for those cases determined to be compensable. *Id.*

Finally, petitioners argued that the ninety-day suspension would not be helpful to respondent now that the cases are being filed at a slow, steady pace, but would have been helpful several months ago when the initial batch of cases were filed upon the effective date of the Vaccine Act, October 1, 1988. Tr. at 62–63. Petitioners contended that the problems being experienced now by respondent would not be corrected by the granting of respondent's motion.

Respondent argued that its workload has been compounded because the petitions being filed are incomplete and, therefore, require a great deal of time and resources to request and gather documents to complete the petition. Tr. at 20. The incomplete petition results in respondent not having sufficient information early in the process and, in effect, putting respondent behind from the beginning. *Id.*

Petitioners answered that the court's General Order No. 24 currently allows respondent to move unilaterally for a 30–day suspension of a case that has an incomplete petition. Tr. at 98. To the extent that respondent's motion is based on the need to complete the petitions, petitioners contend-

---

2. One petitioner represented at the hearing supported respondent's motion; however, for somewhat different reasons. While not addressing specifically the court's procedures, petitioner contended that the suspension was necessary to

ask Congress either to make the system administrative in nature or to remove the limitation on attorneys' fees and expenses so that experienced litigators could afford to represent their clients in this system. *See* Tr. at 82–83.

ed that General Order No. 24 renders respondent's request moot.

## DISCUSSION

While the court sympathizes with respondent's recitation of the problems resulting from a confluence of pressures—the Vaccine's Act 365–day decision time-frame, respondent's lack of resources and the procedures for determining entitlement to compensation under the Vaccine Act—the court is convinced that it is respondent's (both the Department of Justice and the Department of Health and Human Services) lack of resources that has precipitated respondent's extraordinary request to suspend all vaccine cases. However, the government's lack of resources cannot be allowed to penalize petitioners. When the United States undertakes a statutory program, this court must presume that it has the minimal resources required to carry-out the statute.

### A. Procedural Requirements

The Vaccine Act imposes two basic requirements that shape the manner in which this litigation is to be handled. First, the cases are to be heard by a special master in the first instance with review by a Claims Court judge. Second, those two levels of action must be completed within 365 days of the filing of the petition. The parties and the court are constrained to work within the statutory reality of these time-frames and processes. In viewing respondent's arguments in the context of the Vaccine Act's procedural requirements, it is apparent that respondent's inability to dedicate sufficient resources to the handling of the vaccine cases within the 365–day time-frame is the cause of respondent's problem. It is not caused by the court's rules.

As of May 5, 1989, the date of the hearing on respondent's motion, there were 113 vaccine cases pending before the court. Respondent's counsel had assigned "two and a half attorneys—two and a supervisor". Tr. at 22–23. However, one of those attorneys left the program and will not be replaced because of the lack of resources. Tr. at 23. Respondent currently has one pediatric neurologist analyzing the medical records and advising counsel. Tr. at 24. Respondent has reportedly hired a second pediatric neurologist who is not yet on staff. *Id.*

Respondent argued that the court's procedural requirements have caused the strain on its counsel and medical experts which threatens respondent's ability to defend the vaccine cases in this court. There is no basis in the record for respondent's argument.

Respondent's argument presupposes that respondent has allocated some reasonable level of resources to defend these cases and, thus, but for the court's procedural requirements, respondent would be able to process these cases in a timely manner. However, respondent's allocation of resources to handle the vaccine cases is woefully inadequate. Given the failure to allocate even minimally adequate resources, it is apparent that respondent's handling of these cases would result in failure under any process imaginable under this Act.

Respondent argued generally that the court is overburdening respondent with too many status conferences, complex discovery orders and detailed prehearing requirements. If respondent is correct in its argument, however, the corresponding party in the case would feel the same burdensome effects of the court's actions. That is not the case.

*Each petitioner arguing at the hearing stated that the court's rules have not created problems in handling these cases.* With regard to the court's procedures, there was unanimity that the status conferences were very helpful in facilitating communications between the attorneys and assuring that the case was proceeding on schedule. Petitioners agreed that the discovery orders were burdensome, not because of their internal requirements, but because of the short time-frames imposed by the statute. For example, one petitioner argued that to the extent "discovery becomes unbearable in these cases ... it is not a result of the court ... [but] is a result of unnecessary demands [by respondent] which I don't think [respondent] realizes yet are unnecessary." Tr. at 55.

As a group, petitioners saw the court's requirements in handling the cases as being difficult to meet, not because they are unnecessarily burdensome as respondent argues, but because the steps are compressed into a statutorily mandated 365–day time-frame. As one petitioner aptly put it:

I think that there is an awful lot of work that's being done. But you have to take into account that we are litigating an entire [vaccine] case in 365 days. And if we came out here to Arlington, Virginia [federal district court] and got on the rocket docket, we would be litigating an entire [vaccine] case in the same amount of time more or less, and we would be doing 20 times the amount of work that we are doing ... in the Claims Court.

Tr. at 77.

Respondent's argument cannot escape the simple fact that the burden of the process is relative to the amount of resources available to meet the imposed requirements. Respondent acknowledged this in responding to a question on which rules are causing problems:

Scheduling of conferences and whatnot under [Vaccine] Rule Sixteen has been very difficult, partly of course that is a disparity in assets problem. We have had eight Special Masters trying to do their job and two and a half [respondent's] lawyers trying to do theirs.

Tr. at 18. Although respondent argued at one point that ten attorneys could not comply with the court's requirements, tr. at 23, it is clear that the assignment of two and one-half attorneys (in fact, one has left and is not being replaced, tr. at 23), is so unreasonably low that the system is being given no chance to work fairly and effectively.

A similar problem exists with the assignment of a single doctor to act on behalf of respondent. In response to the court's question exploring means of improving the current system by instituting an informal settlement procedure, respondent stated:

The ultimate problem is the mountain of work that the very few people out there are attempting to handle. If there are suggestions for informally exchanging information, I think that we are all for that. Dr. McCormick simply has not been able to be at trial, because she cannot keep up with everything else. She cannot continue to process cases and do reports. She cannot prepare us for other trials if she is attending another trial. She cannot keep up helping us with status conferences if she is trying to be at trials. She simply cannot do everything at once.

Tr. at 116–117.

Although respondent argued for a "streamlined" system for hearing these cases as opposed to "complex traditional litigation", when faced with defining how such a streamlined system would work, it is abundantly clear that respondent's proposed system would require essentially the same time and effort and when compressed within the Vaccine Act's time-frames would create the same manpower pressures as the current system.

Respondent's proposed system envisions an initial evaluation of the petition by the pediatric neurologist culminating in a medical report on liability. The special master would then hold a status conference to focus the issues and presumably consider any procedural problems. An informal hearing or mini-trial would be scheduled. At the hearing, each counsel would present their case with the special master asking questions. Post-hearing briefing could be submitted along with proposed findings of fact and conclusions of law. *See* Tr. at 30.

Under closer scrutiny, respondent's outline of a decision-making system fails because it is just that, an outline. The essential parts which must fill in under the major headings for the system to function efficiently and effectively are missing. For example, respondent advocates the holding of a status conference after the review of the petition to narrow the issues (a proceeding the court wholeheartedly agrees with and is currently conducting). However, respondent's next step in the procedure is some form of an informal hearing. This vacuum between the initial status conference and the hearing is the major area of disagreement by respondent with

the court's process. Respondent evidently sees no need for additional status conferences, discovery or prehearing submissions. However, these procedural tools are essential ingredients to assuring a complete and orderly record and, therefore, an efficient and just decision in the case. The proposed informal hearing would be far more complex without the benefit of any preliminary preparations. Likewise, without those preliminary steps, the special masters' recommended decision would be a mere roll of the dice, an uninformed or poorly informed decision. This would ensure significantly more litigation and judicialization during the review process before the court's judges. The statutory process under the Act is sufficiently complex that the special master cannot function as what would amount to an automobile insurance adjuster, making snap ex parte decisions over the phone after listening to one side in the case. If this was the Act's intent, Congress would not have seen the need for special masters and judges in this process.

For example, while the Vaccine Act requires the filing of "all available relevant documentation" with the petition, petitioner's and respondent's judgment of what the Act means by "all" and "relevant" will at times conflict. Therefore, some discovery will be necessary. Discovery necessarily requires some paper work, telephone conferences (not necessarily involving the special master) and time-frames; however, discovery by definition need not be unduly burdensome. It would also have to be done, under the current statutory scheme, whether or not respondent participated. *See* § 300aa–12(c)(2). However, respondent's informed and cooperative participation could greatly expedite and simplify the process.

Respondent, however, argued that the discovery orders being issued "would make a practitioner in a normal tort case blanch." Tr. at 14. Respondent gave as examples the requirement of "fourteen days to complete all depositions of petitioner's experts" and "getting an examination of the child" and "fourteen days for the petitioner to take whatever depositions." *Id.* Respondent argued that the:

pattern of discovery which has been visited upon us frankly is undoable given the time limits involved and given the number of cases that we have been asked to process in such a short amount of time. *Id.* What is clear from respondent's arguments is that respondent is not objecting to the requirements of the court's discovery orders per se. Rather, respondent is stating that it has insufficient resources to complete the discovery within the allotted time-frames. This again is a function of resources, not process. It is interesting to note that all of respondent's cited examples are discovery orders that flowed to respondent's benefit! Therefore, respondent presumably agrees with the need for some form of discovery. If the time-frames are too short, respondent should either choose not to initiate the discovery or ask for an extension of time to proceed, or allocate more resources to conduct discovery. All of these steps are within respondent's control, at least initially.

Respondent also complains about the numerous conference calls and that the explicit prehearing orders are too numerous and too burdensome. *See* Tr. at 14–15. However, respondent fails to recognize that in any decision-making system, whether the court's currently imposed system or respondent's proposed system, there is a critical need for structure. The structure or procedural requirements serve not only to push the case towards its ultimate resolution but, more importantly, to assure the parties and the decision-maker that the necessary information, testimony and exhibits, are in the record so that the decision-maker can render a fair and expeditious decision in the matter. While the court continually explores different methods of dispute resolution, *e.g.*, the use of mini-trials, *see* General Order No. 13; *see also* tr. at 27, the essential ingredients of a fair decision remain the opportunity to obtain information and to present evidence. The court believes the current system embodies those necessary elements.

### B. Inadequate Resources

After considering the arguments of the two sides, which have presented diametri-

cally opposed views on the nature of the court's procedures, it is abundantly clear that there is only one real difference between respondent and petitioners—resources. However, while any court would hopefully consider a party's occasional request, from either petitioner or respondent, for relief from a scheduling or filing conflict, to tailor the entire procedural process around one side's lack of resources would make a mockery of the judicial process. This is particularly true when that one side is the sovereign. It would also ignore President Lincoln's admonition, carved into the stone of our courthouse:

> It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals.

As petitioners stated, the passage of the Vaccine Act with its requirements, including the 365–day decision time, came as no surprise to respondent. Respondent was involved in the passage of the Act. Respondent also participated, along with a number of petitioners' attorneys, in meetings organized by the court and aimed at assisting in the development of the structure to handle vaccine cases filed under the Act. During the meetings with the court, the various estimates of case filings presented were far greater than the actual experience to date. *See* Tr. at 64. Given the lead time to prepare for defending this new jurisdiction and the "break" from the lower than expected case filings to date, respondent's argument is particularly unpersuasive. As one petitioner characterized respondent's argument:

> We didn't tool up and we don't have enough people and so we want now, right out of the batter's box, everything to be frozen....

Tr. at 40.

Petitioners contended that faced with this type of problem petitioners would hire additional attorneys or shift personnel from one section of the law firm to the affected section until the work crisis is over. *See* Tr. at 66.

The court is cognizant of the fact that petitioners working in the free market have the ability to hire additional lawyers, doctors and staff to handle the crunch of these cases and the time pressures. Respondent, however, is subject to the budgetary constraints of Congress. As the Deputy Assistant Attorney General of the Department of Justice stated:

> Unfortunately, the Department does not operate in ... a 'free market economy.' ... [w]e simply do not have the option when we have enormous new programs visited upon us to do what I would think we could do in the private sector: go out as our business rises and bring in new lawyers.

Tr. at 8–9.

The court cannot, however, allow respondent's administrative difficulties to be visited upon petitioners. As petitioners pointed out, some of these cases have proceeded through the system, liability has been conceded, the amount of compensation has been calculated, and yet these cases also are threatened by a ninety-day delay. Even though respondent stated that it would work with petitioners to move these cases through the system, the court and petitioners would be held hostage to respondent's determinations as to which cases would be worked upon and when. The court finds such a suggestion totally unacceptable to the court and unfair to petitioners.

The court notes that the basic unfairness to petitioners of respondent controlling the timing of their case is compounded by the Act's not including prejudgment expenses in compensation for retroactive cases (which represent all of the cases covered in respondent's motion). *See* § 300aa–15(b). It would be inequitable to visit such a potential financial injustice on a party to assist the opposing side in meeting its own shortfall in resources.

The interrelationship of procedural requirements and the lack of resources and their negative effect on petitioners can be seen clearly from the following petitioner's colloquy:

> One of my biggest problems is that Mr. Parker [respondent's counsel] is overworked and does not have time to return

my phone calls. And what I run into, I will describe them as difficulties for want of a better term, in the ... discovery order, not in terms of whether I can comply with it. (sic) But there is a requirement for joint submissions, and I need to talk to [Mr. Parker] about that. I have trouble getting in touch with him. I have trouble getting phone calls back. I cannot put together something that complies with the order, not because I am unwilling to draft it and send it over to him to see if he will agree with the stipulations, but because I simply get no response.

And that has I think bogged down the process. I do not think that is something that he does intentionally to me. Because when I am sitting in his office and bugging him, he refuses to take other people's phone calls. But they simply do not have the staff to adequately deal with them. And the people who end up being punished for it are not the HHS people are not the Justice Department attorneys, but it is the Petitioners who read the statute and read the legislative history, and look at this as something that it is supposed to correct an inequity, that it is to be an equitable process.

Tr. at 113–114.

*C. Hearings*

As part of respondent's argument that the court's procedures are unduly burdensome, respondent contended that the hearings being conducted are unnecessarily formal and as such contravene the intent of the Act. Respondent stated that the hearings are in fact trials. Respondent contended that the Federal Rules of Evidence are being applied which is contrary to the intent of the Act.

The court notes that as of the date of the hearing on respondent's Motion to Suspend, only *one* hearing had been held in a vaccine case. Petitioner's counsel in that case argued before the court on the matter presently being considered. In commenting on the hearing in the vaccine case, petitioner agreed with respondent that the hearing was akin to a trial. Tr. at 58, 71. However, during the course of the five-

hour hearing, petitioner stated that the Federal Rules of Evidence were greatly relaxed by the special master. In addition, petitioner stated that its expert participated by telephone speakerphone because:

> we were set to go in Massachusetts but because of funding considerations on the part of the [respondent], we brought it down to the Claims Court [in Washington, D.C.].

Tr. at 71.

The major problem petitioner noted with the hearing was that although respondent's expert raised the issue which resulted in a decision not to concede liability in this case, respondent's expert was not produced as a witness. Therefore, petitioner was forced to try the case against the experts' written affidavit which petitioner contended was obvious hearsay. Tr. at 73.

Hearings provide a fast, relatively inexpensive mechanism for getting the necessary information into the record in an orderly fashion, and thus enabling the special masters to render a reasoned opinion. At this time, with only one hearing having been conducted, it is unclear what respondent's objection to the hearing is. Hearings are clearly sanctioned by the Act. *See* § 300aa–12(c)(2). Contrary to respondent's argument, there was not a strict enforcement of the Rules of Evidence. *See* Tr. at 58. Also, despite the parties' belief that the hearing was akin to a trial, the creative use of the telephone for the taking of testimony indicates a more relaxed, informal process. In any event, it is clear to the court that a hearing is the most effective and efficient means of resolving disputes.

It is interesting to note that respondent appears to accept the court's assessment of the hearings effectiveness since respondent retains the hearing as part of its proposed "streamlined" system. *See* Tr. at 32. Respondent's argument is one of a more nebulous character—formality versus informality. After one hearing, it is difficult to draw many hard conclusions. However, one thing is certain, if respondent's expert does not participate, any form of hearing or mini-trial will be less successful in aiding

the parties and the special master in reaching a resolution of the matter.

### D. Counsel's Participation

The second paragraph of respondent's motion states that:

Counsel for Respondent hereby must advise the Court that further participation by counsel will be limited to such action as is contemplated by 42 U.S.C. § 300aa–12(d)(1).

Respondent's Motion to Suspend Proceedings.

It is unclear to the court what respondent means by that statement since § 300aa–12(d)(1) deals with the action by the court on the special master's recommended decision. However, in the context of respondent's motion, it is fair to imply that respondent is intending something less than full participation before the special masters. If that is the case, respondent's actions could seriously jeopardize the quality of the vaccine compensation process.

The adversarial process is a fast and effective means for resolving certain types of disputes. Two parties with respective rights and responsibilities assure the court that all the necessary information is before the court before a decision is rendered. In fact, since the parties have far more knowledge than the judge or special master could ever expect to have in any particular case, the parties can present the facts more efficiently. They know the right questions to ask and to whom to address them. Although the process may be adversarial, that does not mean that flexibility, cooperation, and therefore settlement cannot be part of the same process.

Respondent argues that the procedures should be informal, utilizing mediation and mini-trials. However, the court makes use of those techniques as part of its judicial proceedings. *See, e.g.,* General Order No. 13. In fact, the Vaccine Rules call for a mandatory settlement conference. *See* Vaccine Rule 17(c). In addition, at this youthful stage of the program, the one hearing held showed the flexibility of the procedures by taking telephonic testimony. Status conferences are designed and conducted not as rigid steps but as opportunities for the parties to shape the procedures in a given case. Discovery only becomes rigid and burdensome if the parties make it so. Within the context of the court's Vaccine Rules, there is sufficient flexibility for informal settlement procedures. In fact, they are greatly encouraged. However, the success of a settlement or any other procedure is the participation of the parties. Respondent's counsel's potential non-participation and respondent's doctors inability to participate because of a lack of time would undermine the most informal of procedures.

Without the full participation of Department of Justice and Health and Human Services before the special masters, the risk is run of less than satisfactory decisions by the special masters (*e.g.,* no proof of alternative causation) and therefore more objections when the case goes before the judge. Ironically, this will result in the Department of Justice representing the respondent before the judges in fully judicialized proceedings. These will require expensive and time-consuming live testimony (including testimony from experts and the respondent's doctors) and delay in getting compensation to the victims.

In addition, the lack of participation by respondent's representative will curtail settlements as the special master cannot simultaneously be respondent's fact-finder, decision-maker and settlement negotiator—this would be a true conflict of interest. Removing the option of settlements will result in all cases having to be proven.

Likewise, it will be necessary to litigate the damages and attorney's fees issues, as opposed to the current process, under which respondent is working diligently with the petitioners to settle these issues. This unnecessary duplication of effort would be avoided, in most cases, if full attention to and participation in the case was given the case when pending before the special master.

### CONCLUSION

Respondent's Motion to Suspend Proceedings is denied. However, individual

motions for suspension for times certain, with the consent of petitioner, in individual cases, will be considered sympathetically by the special masters, either under General Order No. 24 or for good cause. It is the opinion of the court that such time suspended would not count against the Act's 365–day decision period.

With regard to the role of respondent's counsel, the court is unclear what respondent intended by advising the court of its limited participation pursuant to 42 U.S.C. § 300aa–12(d)(1).

Accordingly, IT IS ORDERED, that:

(1) If a Department of Justice attorney is currently designated as attorney of record in this case, will this attorney participate fully in the case, before the special master as well as before the judge after a recommended decision is filed? If the answer is negative, will the current attorney of record be filing a formal notice of withdrawal as counsel of record?

(2) If the answer to the first part of question (1) was negative, or no Department of Justice attorney is currently designated as attorney of record, answer the following questions:

—Will the Department of Justice designate a new attorney in this case?

—Is the Department of Justice withdrawing as counsel for the Secretary of the Department of Health and Human Services (Secretary) in this case?

—If the Department of Justice withdraws as counsel, will the Secretary appear before the court pro se or be represented by counsel from the Department of Health and Human Services?

Respondent shall file the answers to these questions by May 26, 1989.