Sharon DAVIS, Administrator of the Estate of Joseph A. Davis, Petitioner,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 89–18V.

United States Claims Court.

Dec. 5, 1989.

Clifford J. Shoemaker, Vienna, Va., for petitioner.

Barbara Hudson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.[1]

## ORDER [2]

NETTESHEIM, Judge.

In this action under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1—300aa-23 (Supp. V 1987), *as amended* by several public laws codified in 42 U.S.C.A. §§ 300aa-1—300aa-23 (West Supp.1989) (the "Act"), Sharon Davis, administrator of her deceased infant son's estate ("petitioner"), seeks compensation for the death of Joseph ("Joey") A. Davis. In a Report and Recommendation for Judgment filed on October 3, 1989, Special Master Elizabeth E. Wright recommended that this court enter judgment on behalf of the decedent's estate, awarding $250,000.00 in compensation and $30,000.00 in attorneys' fees and costs.

Respondent objects to the recommendation of the Special Master and argues that a report titled "VICP [Vaccine Injury Compensation Program] Medical Review" by physicians at the Department of Health and Human Services ("HHS") establishes by a preponderance of evidence that Joey Davis' death was caused by factors unrelated to the administration of the DPT vaccine. Petitioner, by way of response, asserts that the Medical Review was hearsay properly excluded by the Special Master from the proceeding, or in the alternative, that the Special Master read the review, considered its contents, and rejected its conclusions. In support of her alternative argument, petitioner points to sections of the transcript of hearing reflecting that "the Special Master specifically went into detail about possible alternative causation....", Pet's Br. filed Nov. 13, 1989, at 4, before deciding in favor of petitioner.

## FACTS

The Report reveals the following facts to have been established, and neither party objects to them. Joey Davis was born on November 26, 1984, at the Jacksonville Naval Hospital, in Jacksonville, Florida. On January 31, 1985, Dr. Richard Brilli, of the Immunization Clinic of the Naval Air Station, administered the DPT vaccination to Joey. Joey began crying inconsolably after the administration of the vaccine and continued to do so, with only brief intervals of rest, for two days thereafter. On the morning of February 2, Mrs. Davis notified the Naval hospital that Joey looked "drunk" and that his eyes looked "funny" and was advised to bring Joey to the hospital immediately.

Apparently undergoing shock, Joey was transferred by helicopter to the Jackson Wolfson Children's Hospital. His condition worsened on the following day, and he suffered seizures until lapsing into a coma. Joey remained in a coma until February 11, when, upon the advice of physicians at Children's Hospital, Joey was disconnected from a respirator. Shortly before 1:00 p.m. on February 11, 1985, Joey was pronounced dead. Joey's parents filed a petition for compensation under the Act on March 6, 1989.

Respondent's counsel represented in a status conference on May 12, 1989, that the Department of Justice would neither present evidence, call witnesses, nor cross-examine petitioner's witnesses at the hearing that the Special Master intended to conduct. By letter dated May 15, 1989, counsel for respondent transmitted to the Special Master a copy of the April 18, 1989 VICP Medical Review conducted by Doctors Cynthia G. McCormick and Truman L. McCasland of HHS. On May 26, 1989 respondent's counsel filed a Notice of With-

---

1. Counsel for respondent withdrew his appearance on May 26, 1989. Respondent again entered an appearance by agency counsel with the filing of its objections on October 23, 1989.

2. This order may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa-12 (Supp. V 1987). Accordingly, within 14 days of the date of filing this order, the parties shall designate any material subject to section 300aa-12 and such designated material will be deleted for public access. If on review of this order, there are no objections filed within the 14-day period, then it shall be deemed that there is no material subject to section 300aa-12.

drawal. The Special Master, by order entered on May 30, 1989, scheduled an evidentiary hearing for June 14, 1989. The order noted that respondent's counsel had withdrawn and contemplated that respondent would not participate, since only petitioner was directed to make prehearing submissions. No preclusive order was entered, however, preventing respondent from adducing evidence as a consequence of counsel's withdrawal. In addition to petitioner herself, Dr. Mark R. Grier, an obstetrical geneticist and medical researcher, testified on petitioner's behalf at the hearing. Documentary evidence was admitted on behalf of petitioner alone. Neither counsel from the Department of Justice nor HHS was present on behalf of respondent during the hearing.

In considering respondent's objections, the court focuses on two questions: First, of what significance is the fact that respondent sent the Medical Review to the Special Master, but did not introduce it during the evidentiary hearing? Second, to what extent did the Special Master consider the Medical Review, despite the fact that it was not introduced into evidence?

## DISCUSSION

Beginning with Judge Robinson's opinion in *Matthews v. Secretary*, 18 Cl.Ct. 514 (1989), the judges of the Claims Court undertook, as a matter of first impression, to apply the Act's requirements in reviewing Special Masters' contested recommendations on liability against respondent's objections accompanied by offers of proof in the form of medical reports. To date three judges have differently interpreted the Act, and this court adds a fourth view. Encomiums to those who were responsible for the Act's passage notwithstanding, *see Shaw v. Secretary*, 18 Cl.Ct. 646, 649 n. 2, (1989), the Act's provisions concerning the roles and responsibilities of the Special Masters and judges of the Claims Court are not clear, and the legislative history does not give them ballast. Indeed, each of the judicial interpretations issued thus far offers a reasonable construction of these provisions.

Judge Robinson ruled in *Matthews* that the Act empowered the Special Master to enter a preclusive order, thereby preventing respondent from submitting a medical report for the first time on review by the judge. Judge Gibson in *Yang Kue v. Secretary*, 18 Cl.Ct. 777 (1989), disallowed proffer of a medical report to the court on review of a Special Master's report absent a showing of why the expert did not testify at the hearing and on the basis that the report constituted inadmissible hearsay. In *Manley v. Secretary*, 18 Cl.Ct. 799 (1989), Judge Robinson extended the rationale of both *Matthews* and *Yang Kue*, each of which highlight a concern for the court's proper role, in holding that an unsponsored medical report, a doctor's affidavit, and medical literature were inadmissible hearsay in the proceeding below because the Special Master could not have sufficient assurance as to the materials' truth, validity, or trustworthiness. *Manley*, 18 Cl.Ct. at 801. Finally, Judge Rader in *Shaw* ruled that the Act requires the judge to evaluate all medical evidence put on the record until judgment is entered, even if not submitted in a hearing before the Special Master. However, he remanded the proffer of a medical report to the Special Master. *Accord Strother v. Secretary*, 18 Cl.Ct. 816 (1989).

The sorry situation is not the product of jurists eager to write at the cutting edge of statutory interpretation, but, rather, the consequence of legislative misdirection and indirection. In short, the Act's provisions for determining entitlement to awards do not work, and a judicial bandaid will not resolve the problems that have ensued. When legislation cannot be implemented without a divining rod, the first casualty is the intended objective—in this case, the prompt resolution and payment of legitimate claims. The second casualty is suffered by the fisc—in this case, due to increased costs of administering the statutory provisions in a federal court. Why these problems developed is more easily identifiable than a solution: The Act represents the first occasion that Congress has reposed administrative fact-finding of first impression with relaxed evidentiary stan-

dards in a federal court bound to follow the Federal Rules of Evidence.

A brief review of the pertinent provisions of the Act is in order. 42 U.S.C.A. § 300aa–12 provides for initial fact-finding to be performed by a court-appointed Special Master, who serves as an adjunct to the Claims Court. In pertinent part the Act provides:

(c) Special masters

(1) Following receipt of a petition under subsection (a) of this section, the United States Claims Court shall designate a special master to carry out the functions authorized by paragraph (2).

(2) A special master *shall serve as an adjunct to the court* and may—

(A) require such evidence as may be appropriate for the presentation of proposed findings of fact and conclusions of law with respect to whether compensation is to be provided under the Program, and the amount of any such compensation,

(B) require the submission of such information as may be reasonable and necessary to determine if the petitioner is entitled to compensation,

(C) require the testimony of any person and the production of any document as may be reasonable and necessary to determine if the petitioner is entitled to compensation,

(D) conduct such hearings as may be appropriate, and

(E) prepare and submit to the court proposed findings of fact and conclusions of law.

Information submitted to the special master in a proceeding on a petition may not be disclosed to a person who is not a party to a proceeding without the express, written consent of the person who submitted the information. There may be no discovery in a proceeding on a petition other than the discovery required under this paragraph.

(Emphasis added.)

42 U.S.C. § 300aa–12 also provides that the Special Master's proposed findings of fact and conclusions of law be reviewed by the Claims Court:

(d) Action by the court

(1) Upon objection by the petitioner or respondent to the proposed findings of fact or conclusions of law by the special master or upon the court's own motion, the court shall undertake a review of the record of the proceedings and may thereafter make a de novo determination of any matter and issue its judgment accordingly, including findings of fact and conclusions of law, or remand for further proceedings.

The court's *de novo* review includes examination of a range of materials:

(b) Matters to be considered

(1) In determining whether to award compensation to a petitioner under the Program, the court shall consider, in addition to all other relevant scientific evidence contained in the record—

(A) any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition or death, and

(B) the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions.

Any such diagnosis, conclusion, judgment, test result, report or summary shall not be binding on the court. In evaluating the weight afforded to any such diagnosis, conclusion, judgment, test result, report, or summary, *the court shall consider the entire record and the course of injury, disability, illness, or condition until the date of the judgment of the court.*

42 U.S.C. § 300aa–13(b) (emphasis added). The "record" is defined in section 300aa–13(c) as

the record established by the United States Claims Court in a proceeding on a petition filed under section 300aa–11 of this title.

According to the Act, the Claims Court undertakes review of the record for two purposes. The court must determine 1) (a) whether a petitioner has demonstrated by a

preponderance of evidence that the person who suffered an adverse condition did so as a result of a manifestation listed in the Vaccine Injury Table or died within the time specified after administration of the vaccine (so-called legal causation) or (b) whether the adverse condition, although not listed in the Table, was caused by the vaccine (so-called causation in fact); and 2) whether there is not a preponderance of evidence that the adverse condition or death was unrelated to administration of the vaccine. 42 U.S.C. § 300aa–13(a). A successful showing of legal causation or causation in fact does not entitle a petitioner to compensation. The court must still determine that a preponderance of evidence does not indicate an alternative cause of the injury. *Shaw*, 18 Cl.Ct. at 651.

The development and review of the Special Master's report under these standards present a number of difficulties. While the Special Master serves as an "adjunct" to the Claims Court, the hearing over which the Special Master presides differs in significant respects from the proceedings of the Claims Court. In suspending the civil discovery process in cases before the Special Master, the Act contemplates that the Special Master act as an impartial, efficient investigator into the facts of each case. No provision is made in the statute for use of the Rules of Evidence in developing the record before the Special Master. To the contrary, phrases such as "require such evidence as may be appropriate," 42 U.S.C. § 300aa–12(c)(2)(A), or "require the submission of information as may be reasonable and necessary," § 300aa–12(c)(2)(B), connote a fact-finding mission that is not limited by formal evidentiary rules. The Special Master's role as a "vigorous and diligent" investigator is described in the House Report accompanying the Act:

In order to expedite the proceedings, the power of the Special Master is intended to replace the usual rules of discovery in civil actions in Federal courts. Because the only issues relevant to the compensation proceedings are whether the petitioner suffered a compensable injury and, if so, the extent of compensable damages, there should be no need for a wider inquiry, which might be appropriate in a civil action raising other issues. Thus, while the Special Master may compel any testimony or appearance, neither party is given power to cross-examine witnesses, file interrogatories, or take depositions. In this regard, the Committee expects the Special Master to be vigorous and diligent in investigating factual elements necessary to determine the validity of the petitioner's claim.

H.Rep. No. 908, 99th Cong., 2d Sess. 1, 16–17, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6287, 6344, 6357–58.

The tension between the Special Master's role of investigator and the role of the Claims Court in reviewing the record made below occurs because judges of the Claims Court are bound to use the Federal Rules of Evidence. 28 U.S.C. § 2503(b) (1982). The Act runs afoul of the Claims Court's mandate to the extent that it contemplates that the judge, in contrast to the Special Master, receive material into the record that could not be admitted as evidence.[3] Moreover, although the Act expressly modifies the discovery and witness-examination procedures customarily available under the Federal Rules of Civil Procedure (adopted with minor modifications by the Claims Court), the Act does not relax the Federal Rules of Evidence under which the Special Master, as an "adjunct" to the

---

**3.** It is worthwhile to note the findings of the judge and the Special Master, based on the record created, are not admissible in any later civil action. 42 U.S.C. § 300aa–23(e). This is so because proceedings under the Act differ so fundamentally from traditional civil actions that the introduction of matters produced under the Act would be disruptive and confusing to courts employing the Rules of Evidence. The House Report explains:

Compensation standards, evidence, and proceedings are sufficiently different from civil proceedings in tort that the findings made in compensation are not likely to be based on the more rigorous requirements of a tort proceeding and might confuse such civil actions. H.Rep. No. 908, 99th Cong., 2d Sess. 1, 29, *reprinted in* 1986 U.S.Code Cong. & Admin. News 6344, 6370.

Claims Court, customarily would be bound.[4]

The Claims Court often sits as a court of error, yet the same difficulties do not emerge in its other cases. The normal rule is that administrative determinations are not to be displaced by judicial determinations made entirely *de novo*. In the context of disability pay disputes, for example, wherein the court reviews the actions of Boards of Correction of Military Records, a reviewing court cannot overturn a determination made by the military with respect to disability retirement, absent violation of a statute or regulation, *Curry v. United States*, 221 Ct.Cl. 741, 746, 609 F.2d 980, 983 (1979), unless the plaintiff shows " 'by cogent and clearly convincing evidence" ' that such a determination is arbitrary, capricious, or unsupported by substantial evidence. *Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977) (quoting *Stephens v. United States*, 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966)). "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm...." *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983).

This more deferential standard also protects the integrity of the court's processes. In determining whether there is "substantial evidence" in the record, the importance of individual, distinct portions of the record is reduced. The court need not evaluate critically and assign weight to each part of the record—much of which might not qualify as admissible evidence—so as to satisfy itself as to the correctness of the result. A more deferential standard allows the court to avoid the problems inherent in review of a record that the court did not form and was not created in accordance with the Federal Rules of Evidence.

Similarly, when a judge of the Claims Court sits in review of one of the court's colleagues, as it does with appeals from congressionally referred matters, 28 U.S.C. §§ 1492, 2509 (1982), review of the "hearing examiner's" factfinding is conducted upon a clearly erroneous standard. *Merchants Nat'l Bank of Mobile v. United States*, 7 Cl.Ct. 1, 7 (1984); RUSCC Appendix D ¶ 8. To countermand a factual finding on appeal, the reviewing panel must be left with "the definite and firm conviction that a mistake has been committed." *Merchants*, at .7 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). When the Claims Court sits as an appellate body, it places great weight upon the findings made by the hearing judge and accords due regard to the fact finder's opportunity to assess the credibility of witnesses. *Id.* Many of the dangers of making factual determinations in an appellate posture thus are avoided through the use of deferential legal standards.

■ In administering the Act's compensation program, however, Congress has directed judges of the Claims Court to accord no deference to the fact-finding of the Special Master. *De novo* review of the record necessitates an examination of the record as *tabula rasa*. See *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1513 (Fed.Cir.1984) ("*De novo* review means a totally new fact-finding effort."); *SSIH Equip. S.A. v. USITC*, 718 F.2d 365, 381 (Fed.Cir.1983) (Neis, J., additional comments) (The court in *de novo* review must exercise its independent judgment on the evidence of record.).

The scope of the court's review is significant because, under the Act, the "record" covers a wide range of materials. The record is defined as that established by the "Claims Court" in a "proceeding on a petition". 42 U.S.C. § 300aa–13(c). The phrase "proceeding on a petition", in describing the record, appears not limited to those materials received in any evidentiary hearing conducted by the Special Master. Under customary usage a record includes the materials required to be submitted with the petition, 42 U.S.C. § 300aa–11(c) (even

---

4. Vaccine Rule 16(d)(5) provides that the Special Master "may make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Federal Rules of Evidence for a court sitting without a jury."

if they are not introduced in a subsequent hearing); the materials received during any evidentiary hearing and references to all excluded materials; and the materials on file if no hearing is held.[5] Although the record on review usually comprehends the entire record of proceedings when an evidentiary proceeding is conducted, evidentiary materials that are not offered in evidence are not part of the record. In this case, respondent submitted by letter the VICP Medical Review one month before the hearing and did not participate thereafter.

Compounding the problem of whether the Medical Review should have been considered as part of the record is the Act's denomination of the record as that established by the Claims Court. On the one hand, the Special Master serves as an adjunct to the court, so that the record properly may be viewed as that transmitted by the Special Master. On the other hand, the provision could be read, as Judge Rader did in *Shaw*, to contemplate that the fact-finding process continue before the judge: "Until entry of judgment, the record of proceedings is not closed and this court retains an obligation to consider all scientific, medical, and legal matters brought to its attention by either party." *Shaw*, 18 Cl.Ct. at 652.

This view has some precedential backbone in that the former Court of Claims supplemented the record on review of disability determinations[6] with *de novo* evidence. The Court of Claims reasoned that Congress had not prescribed a specific method of review and that the administrative process did not offer "fuller, adversary, more trial-type hearings" and "more extensive opinions and factual findings." *Brown v. United States*, 184 Ct.Cl. 501, 517, 396 F.2d 989, 1000 (1968) (footnote omitted) (citing as an appendix disability cases admitting *de novo* evidence, 184 Ct.Cl. at 518–19, 396 F.2d at 1000–01). However, the record still was reviewed under the substantial evidence standard, *viz.*, whether the decision was supported by substantial evidence in view of the administrative record and the new evidence. *See Beckham v. United States*, 179 Ct.Cl. 539, 544, 375 F.2d 782, 785 (1967). Later Court of Claims cases typically resolved reviews of disability claims on cross-motions for summary judgment without additional fact-finding. *See Haldane v. United States*, 1 Cl.Ct. 691, 695 (1983) (citing cases). Of course, the Court of Claims and the Claims Court always received evidence of post-separation continuing medical conditions that was unavailable to earlier decisionmakers. *See Friedman v. United States*, 159 Ct.Cl. 1, 17 n. 11, 310 F.2d 381, 391 (1962), *cert. denied sub nom.* (1963) *Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

■ The mandate from Congress is that the Special Master should review and consider "relevant medical and scientific evidence ...," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record...." 42 U.S.C. § 300aa–13(b)(1). The court can consider such material that has been included in the record before the Special Master; it cannot admit nonevidentiary material that is offered for the first time on review to the court. If the record before the court itself is opened up for development of new facts—aside from new

---

5. A reading of the Act wherein the terms "hearing" and a "proceeding on a petition" are used supports this construction. Section 300aa–12(c)(2)(D) states that the Special Master may "conduct such hearings as may be appropriate". Later in that same section, the Act provides that "[i]nformation submitted to a special master in a proceeding on a petition" may not be disclosed without consent of the submitting party. 42 U.S.C. § 300aa–12(c). No suggestion is present that only those items that are submitted in a hearing are to be guaranteed protection against disclosure; use of the phrase "proceeding on a petition" suggests that a much larger category of information than that received at a hearing is to be given protection against disclosure. As the term "hearing" is used differently from "proceeding on a petition", the court reads the latter as encompassing all papers and other information submitted to the Special Master for consideration and review.

6. Once the Court of Claims employed "trial commissioners," some of these cases were delegated for trial and recommended findings and conclusions were reviewed for clear error.

evidence of a continuing medical condition or newly discovered evidence, which would be considered, in any event—then the proceedings before the Special Master become a nullity. This case illustrates the point: The Special Master held a hearing at which petitioner's medical expert testified. The VICP Medical Review was not offered in evidence; it was not sponsored by argument of counsel; it was unexplained by witness testimony. If the court were to consider the Medical Review now, the court could not reasonably weigh it against Dr. Grier's testimony and his responses to the Special Master's questions. Both Dr. Grier and the Medical Review purport to accomplish the same task: provide expert medical opinions as to the cause of Joey Davis' death. However, one was elicited under oath, with the give-and-take of direct examination and interrogation by the Special Master. The second was unsworn and static. If the court were to call the VICP reviewers in a limited evidentiary proceeding, *see* RUSCC 43(c), no reasonable determination yet could be made, because Dr. Grier's testimony would be canned in the earlier transcript before the Special Master. Although this court could require Dr. Grier to testify again (and be cross-examined as a matter of right, unlike the proceedings before the Special Master), the procedure would render the Special Master's hearing a waste of time. That, it cannot be presumed, was Congress' intent.

In the case at bar, the VICP Medical Review was not included in the record transmitted by the Special Master. Apparently, the original was returned to respondent's counsel; the Special Master's office provided a copy to the court. Contrary to petitioner's contention, the Special Master's report does not reflect that she either considered the Medical Review or rejected it as inadmissible hearsay or for some other reason. The court has three options: It may uphold the Special Master's action in not considering the report, yet attempt to make a *de novo* determination on the sufficiency of the Medical Review; it may uphold the action in not considering the report and reject the Medical Review as inadmissible hearsay; or it may remand for further

proceedings. *See* 42 U.S.C. § 300aa–12(d)(1).

■ A reasonable construction of the Act is that the "record" developed before the Special Master includes all materials required to accompany the petition; the record of any hearing; and the record developed in resolving the claim without a hearing. The record does not include materials offered for the first time on review, unless they meet the exceptions allowing evidence of a continuing medical condition or newly discovered evidence. Interpreting the record as encompassing all items submitted by the parties for the Special Master's consideration and review, the rejection of the VICP Medical Review would have been improper had respondent offered it at the hearing. It should have been part of the Special Master's investigation had it been made part of the hearing record.

■ The court declines to make a *de novo* determination on the sufficiency of the VICP Medical Review. The Special Master has focused extensively on the factual basis of petitioner's claims and has been educated by the responses of petitioner's expert to questions posed at the hearing. The Special Master's familiarity and experience with these matters makes her better equipped to pass as matter of first instance on the sufficiency of the Medical Review in establishing whether Joey Davis' death was the result of factors unrelated to the administration of the vaccine.

Not insignificant is the fact that Medical Review has not been introduced in a proceeding of this court under the Rules of Evidence. To decide whether the Medical Review establishes any fact by a preponderance of the evidence would conflict with the Claims Court's duty to conduct fact-finding based upon evidentiary rules. The Special Master is not so constrained. Upon these facts, a remand to the Special Master is appropriate.

■ The Special Master's proceeding provides a better forum to review matters which Congress wanted a part of the decisionmaking process, yet which may not qualify as evidence. However, the Act em-

powers the Special Master to hold evidentiary hearings. The Special Master may order that respondent present its medical reports by a competent witness. If the Special Master does so and respondent fails to produce a witness, the Special Master can enter a preclusive order which would forfeit respondent the opportunity to present any expert witness testimony. By requiring the Special Master to consider all medical reports, the Act does not allow respondent to circumvent an order requiring participation in an evidentiary hearing. *See Yang Kue*, 18 Cl.Ct. at 778 n. 2; *Matthews*, 18 Cl.Ct. at 531. Nonetheless, the Act intends that the Special Master consider such medical reports. If respondent fails to produce a witness, the Special Master shall consider the Medical Review, provided that respondent has listed it as an exhibit, and accord it whatever weight she deems appropriate.

Petitioner argues that rejection of the Medical Review was proper and that, even though excluded, it was considered by the Special Master. Petitioner asserts that having considered the Medical Review, the Special Master questioned petitioner's expert on whether the rotavirus was a potential cause of Joey's death and that "[a]ll of the issues raised in Respondent's medical review were intentionally addressed...." Pet's Br. filed Nov. 13, 1989, at 4 (emphasis omitted). While the Special Master did discuss the autopsy report and explore the rotavirus an as alternative cause of Joey's death, *see* Transcript of Proceedings, No. 89–18V (Cl.Ct. Spec. Master June 14, 1989), at 68–70, a more thorough inquiry should have been made on the basis of the Medical Review. *See Brown v. Secretary*, 18 Cl.Ct. 834, 839 (1989) ("[M]edical records and medical opinion must be viewed as very persuasive, and often the most reliable evidence...."). Especially in light of the fact that Joey's treating physician, Dr. James H. McCrory, appears to share the view that Joey died of complications of a rotavirus infection, the factual and medical basis of respondent's alternative etiology should be revisited. The court expresses no view at this time as to whether respondent's review establishes by a preponderance of evidence an alternative etiology.

■ Remanding this action to the Special Master for a more detailed inquiry into the matters contained in the VICP Medical Review should not call into question the quality of the Special Master's efforts to date. To the contrary, it is clear from the record that elements of an alternative etiology of Joey's death would have come into sharper focus had the Special Master had the benefit of respondent's participation in the matter. Until recently, the Department of Justice has had only one trial attorney available for all vaccine compensation cases. *See Gregson v. Secretary*, No. 88–1V, Transcript of Proceedings (Cl.Ct. May 5, 1989), at 23 ("Tr."). The hearing in *Gregson*, conducted in all pending vaccine cases and at which the Department of Justice and petitioners were represented, reveals that, as the Department of Justice became overwhelmed, it moved to suspend all vaccine compensation cases for a period of 90 days so as to either a effect a modification of the compensation program or secure greater staff resources. *Id.* at 11, 27. Chief Judge Smith in *Gregson* denied the Department's request. *Gregson v. United States*, 17 Cl.Ct. 19, 20 (1989). Shortly after the *Gregson* opinion issued, respondent's counsel signaled his withdrawal from this case, observing that "the Department of Justice has no option but to withdraw from participating in cases under the Program until such time as circumstances permit." Resp's Response to Order filed May 26, 1989. In the interim counsel for HHS has filed a notice of appearance in this case. It is hoped that she will be available and participate in any proceedings that the Special Master might convene.

The transcript of the 3–hour hearing in *Gregson* is remarkable in revealing the frustration of the public and private bars. The former was of the view that the Claims Court had "judicialized" what Congress intended as a streamlined process; the latter believed that HHS had resisted straightforward, adequately documented claims and that Congress did not intend any medical tests beyond those submitted with the peti-

tion. The Claims Court's predicament was synopsized by Michael R. Hugo, who appeared on behalf of 18 petitioners' attorneys:

> We were all working on it to get it passed. HHS was there. Justice was there. The Petitioners were there. The Court wasn't there because you guys didn't have any idea what was about to happen to you.

Tr. at 63.

From this court's perspective, the model for what Congress apparently desired existed in the Public Safety Officers' Benefit Act, 42 U.S.C. §§ 3796–3796c (Supp. IV 1986) (the "PSOBA"). In this modest legislation, Congress provided for a lump-sum benefit to be paid certain public safety officers, truncating causation merely to proof of the occurrence of death in the line of duty. Since an administrative agency was charged with implementing the PSOBA, 28 C.F.R. §§ 32.1–32.24 (1986), the agency promulgated regulations for the fact-finding that was to precede judicial review for substantial evidence in the Claims Court. *See Cartwright v. United States*, 16 Cl.Ct. 238, 241 (1989). 28 C.F.R. § 32.24(c) stipulates that the hearing officer shall conduct any hearing, as follows:

> [T]he hearing officer shall not be bound by common law or statutory rules of evidence, by technical or formal rules of procedure, or by Chapter 5 of the Administrative Procedures Act, but must conduct the hearing in such manner as to best ascertain the rights of the claimant. For this purpose the hearing officer shall receive such relevant evidence as may be introduced by the claimant and shall, in addition, receive such other evidence as the hearing officer may determine to be necessary or useful in evaluating the claim. Evidence may be presented orally or in the form of written statements and exhibits....

This provision illustrates one method of instructing the fact-finding that Congress seems to have intended in the Act.

Accordingly,

IT IS ORDERED, as follows:

1. Pursuant to Vaccine Rule 19(c)(2), this case is remanded to the Special Master to conduct further proceedings consistent with the above.

2. Respondent shall be required to state its views on the appropriateness of a $30,000.00 limitation contained in 42 U.S.C. § 300aa–15(b) and the amount of attorneys' fees claimed in this action.

3. The Special Master shall supplement her decision by directing further inquiries into alternative etiology set forth in the VICP Medical Review. If the Special Master convenes another hearing to take the testimony of the authors of the VICP Medical Review, she shall specify whether cross-examination shall be allowed. If so, Dr. Grier shall not be subject to recall. Respondent has forfeited the opportunity to cross-examine him. The Special Master shall file a supplemental report with the Clerk of the Court by January 30, 1990.