Lisa **MUNN**, Personal Representative of the Estate of Chelsea Vukelich, Petitioner,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES**, Respondent.

No. 89–71V.

United States Claims Court.

Aug. 29, 1990.

---

Michael R. Hugo, Boston, Mass., attorney of record, for petitioner.

Laura S. Radack, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent. Maureen L. Kerrigan, Office of General Counsel, Dept. of Health and Human Services, of counsel.

## ORDER

HARKINS, Senior Judge:

Petitioner, Lisa Munn, as representative of the estate of her daughter, Chelsea Vukelich ("Chelsea"), seeks review in the United States Claims Court under the National Vaccine Injury Compensation Program (Program) of a decision by a special master. 42 U.S.C.A. § 300aa–12(e) (West Supp.1990). The Program was established in 1986 as part of the National Childhood Vaccine Injury Act. Pub.L. No. 99–660, Title III, § 311(a), 100 Stat. 3756. Procedures applicable to the functions of special masters, and review of decisions of special masters, however, were amended substantially in the Omnibus Budget Reconciliation Act of 1989 (1989 Amendments). Pub.L. No. 101–239, Title VI, § 6601(b), 103 Stat. 2285–94 (Dec. 19, 1989). Provisions of the Program are contained in 42 U.S.C.A. §§ 300aa–10 through 300aa–34 (West Supp. 1990). Further citations to the Program in this order omit "42 U.S.C.A. § 300aa-___."

Chelsea was born full term on July 26, 1986, and had no apparent abnormalities. The first DTP (diphtheria-tetanus-pertussis) inoculation was received on October 21, 1986, and a second inoculation was given on December 1, 1986. Four days later, on December 5, 1986, Chelsea died. The petition, filed June 28, 1989, sought $250,000 as compensation for a vaccine-related death, as well as attorney fees and expenses.

The proceedings include a hearing on April 5, 1990, in Duluth, Minnesota. In a

decision filed May 15, 1990, that analyzed the evidence in the record and included specific findings of fact and a conclusion of law, Special Master Paul T. Baird found petitioner was not entitled to compensation under the Program. The decision included the following findings of fact:

(a) Chelsea did not suffer an encephalopathy within 3 days following the December 1 DTP vaccination.

(b) Chelsea suffered a hypotonic-hyporesponsive episode on December 4, within 72 hours following the administration of DTP vaccine on December 1. This hypotonia may have been caused by pneumonia developing in Chelsea's lungs.

(c) Chelsea was infected with pneumonia prior to or about the same time that she got her second DTP inoculation, and the onset of the pneumonia was independent of the administration of the DTP vaccination.

(d) Chelsea's death was caused by severe necrotizing pneumonia; she succumbed to infection, not to shock. The pneumonia was acquired independently of the vaccination and was a factor unrelated to the administration of the vaccine.

In her motion for review, petitioner states that the evidence adduced at the hearing established that Chelsea suffered injuries defined within the Vaccine Injury Table at Section 14(a)I.B (Encephalopathy (or encephalitis)), Section 14(a)I.C (Shock-collapse or hypotonic-hyporesponsive collapse), and Section 14(a)I.D (Residual seizure disorder in accordance with subsection (b)(2)). The motion contends that these injuries were established by a preponderance of the evidence that entitled her to a presumption that the symptoms were caused by the vaccine, and that Chelsea was not afforded that presumption. The motion further contends that the special master's conduct during the hearing exceeded the bounds of permissible examination, constituted an abuse of discretion, and resulted in a decision that was arbitrary, capricious and not in accordance with the letter or spirit of the Program.

Prior to enactment of the 1989 Amendments, the Claims Court was authorized to review proposed findings of fact or conclusions of law prepared by the special master and to make a "de novo determination of any matter." 42 U.S.C. § 300aa–12(d)(1) (1988). *See Davis v. Secretary*, 19 Cl.Ct. 134 (1989); *Bunting v. Secretary*, 19 Cl.Ct. 738 (1990). The 1989 Amendments established new standards applicable to review in the Claims Court of the decision of a special master, and limited the scope of review.

The responsibilities and functions of special masters in the Program's amended procedures are unique. The 1989 Amendments established a separate office of special masters within the Claims Court, administered by a chief special master, and gave that office special authority and considerable administrative independence in decisions on claims for compensation under the Program. Section 12(c). The 1989 Amendments directed promulgation of separate rules for special masters, and established specific criteria the rules were to contain (Section 12(d)(2)), the requirements of a special master decision were defined (Section 12(d)(3)(A)), and standards were established for conduct of proceedings on a petition (Section 12(d)(3)(B)). Review of a special master's decision by the Claims Court is expected to be an exceptional occurrence rather than a routine procedure.

A special master's decision may not be disturbed by the Claims Court unless the court finds it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The 1989 Amendments defined the Claims Court function in a review of a special master's decision in Section 12(e)(2), as follows:

(2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

The report of the Conference Committee on the 1989 Amendments emphasized that an appeal to the Claims Court was to be "under very limited circumstances." The report states:

The Conferees have provided for a limited standard for appeal from the master's decision and do not intend that this procedure be used frequently but rather in those cases in which a truly arbitrary decision has been made.

135 Cong.Rec. H9477 (daily ed. Nov. 21, 1989).

In its review, the Claims Court may not parse the record and substitute what would have been its judgment had it initially decided the matter. The Claims Court may not substitute its own judgment for that of the special master. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Where there is conflicting evidence, appropriate deference is given the special master's findings of fact. *Hambsch v. Dept. of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Findings of fact made by the special master are reviewed under a standard that is narrower than the "clearly erroneous" standard provided in RUSCC 52(a). Legal concepts developed in application of the "substantial evidence" standard to issues of fact do not apply in a review of a special master's decision. If the evidence in the record has been considered, and such evidence provides a reasonable basis for the special master's finding, the special master's findings of fact may not be set aside. Mixed questions of law and fact, which entail the application of a legal standard to a given factual pattern, are to be reviewed under this new and narrower standard. *Eli Lilly & Co. v. CIR*, 856 F.2d 855, 861 (7th Cir.1988).

On issues of law, recognition is to be given to the special master's expertise in the development of these novel procedures. A decision on issues of law applicable to the Program should be overturned only when error is unmistakenly clear.

RUSCC Appendix J provides rules that apply to review of the decisions of special masters. Petitioner's motion and the supporting memorandum do not comply with these rules. RUSCC Appendix J.II.2 provides:

2. Memorandum of Objections. The motion for review must be accompanied by a memorandum of numbered objections to the decision. This memorandum must fully and specifically state and support each objection to the decision. The memorandum shall cite specifically to the record created by the special master, *e.g.*, to specific page numbers of the transcript, exhibits, etc., and should also fully set forth any legal argument the party desires to present to the reviewing judge. The memorandum shall be limited to 20 pages and must conform to the provisions of RUSCC 82.

The rule requires numbered objections and specific citations to the record created by the special master. Petitioner's memorandum of objections does not identify any statement in the special master's decision or any evidence in the record that supports the contention that Chelsea suffered a residual seizure disorder. The June 28, 1989, petition for compensation, which on its face does not meet the requirements of Section 11(c), does not allege, and the accompanying documentation does not support, a contention that Chelsea suffered a residual seizure disorder. In fact, at the hearing, petitioner's medical expert stated that it was his opinion that "Chelsea did not suffer a permanent seizure disorder as a result of her second DPT."

Petitioner contends that the conduct of the special master during the hearing exceeded the bounds of permissible examination. Petitioner's memorandum raises no specific objection to the conduct of the special master during the hearing, other than to state that the special master did not place respondent's VICB Medical Review into evidence as a *numbered* exhibit (em-

phasis supplied). During the hearing, petitioner's objection to admission of the VICB Medical Review in evidence was overruled, and petitioner was told the Medical Review had been submitted sufficiently ahead of time to give petitioner time to address it. Respondent's Medical Review was filed March 7, 1990, approximately one month before the hearing on April 5, 1990. Petitioner's objection as to numbering is meritless. Admission of the Medical Review in evidence in the interest of fairness and completeness of the record is well within the scope of a special master's authority, and the conclusion that petitioner had sufficient notice is reasonable.

During the hearing, petitioner objected to the special master's questions to petitioner's expert witness on the ground that any such cross-examination should have been conducted by respondent. Petitioner contended that the special master had crossed into the zone of conducting a defense of the case on behalf of the Government. Petitioner's objection was overruled, and the expert was directed to testify.

The statute directs that the vaccine rules shall: —provide for less adversarial, expeditious, and informal proceedings (Section 12(d)(2)(A)),—include flexible and informal standards of admissibility of evidence (Section 12(d)(2)(B)),—and include the opportunity for parties to submit arguments and evidence on the record without requiring routine use of oral presentations, cross examinations, or hearings ... (Section 12(d)(2)(D)). In the conduct of a proceeding on a petition, the statute (Section 12(d)(3)(B)) provides a special master—

(i) may require such evidence as may be reasonable and necessary,

(ii) may require the submission of such information as may be reasonable and necessary,

(iii) may require the testimony of any person and the production of any documents as may be reasonable and necessary,

(iv) shall afford all interested persons an opportunity to submit relevant written information, ... and

(v) may conduct such hearings as may be reasonable and necessary.

The Vaccine Rules of the Office of Special Masters explicitly provide for the special master to question a witness. Vaccine Rule 8(e) provides:

(e) *Hearing.* When necessary, the special master may conduct an evidentiary hearing. The special master will determine the format for such a hearing. The special master may permit testimony at such a hearing via telephone. The special master may permit direct examination of a witness or may permit or require that the direct testimony be submitted in written form. The special master may question a witness and may on request permit questioning by opposing counsel. The clerk on request may issue a subpoena requiring the attendance of a witness at such hearing.

19 Cl.Ct. XXVII.

The special master's role in the Program as inquisitor and investigator is emphasized in the legislative history. The Report that accompanied the 1986 Act states:

Thus, while the Special Master may compel any testimony or appearance, neither party is given power to cross-examine witnesses, file interrogatories, or take depositions. *In this regard, the Committee expects the Special Master to be vigorous and diligent in investigating factual elements necessary to determine the validity of the petitioner's claim.*

H.R.Rep. No. 908, 99th Cong., 2d Sess., pt. 1 at 17, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6287, 6344, 6357–58 (emphasis supplied). The Conference Report on the 1989 Amendments further defined this role:

The system is intended to allow the proceedings to be conducted in what has come to be known as an "inquisitorial" forma[t], with the master conducting discovery (as needed), cross-examination (as needed), and investigation.

135 Cong.Rec. H9476 (daily ed. Nov. 21, 1989).

Although petitioner has not complied with RUSCC Appendix J.II.2 with respect

to the allegations about the conduct of the special master, this objection, on the merits, is without substance. The conduct of the special master was well within the letter and the spirit of the Program. Petitioner has failed to demonstrate that the special master's admission and use of the respondent's Medical Review, and his questioning of petitioner's expert witness, during the hearing was either arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

Petitioner's memorandum in large part is a restatement of testimony and contentions made during the hearing. In part of this restatement, petitioner argues that the special master did not give sufficient weight to the testimony of petitioner's expert witness, and that the special master's interpretations of two scientific studies presented by the expert were incorrect.

█ Nothing in the statute requires the special master to concur with medical expert opinion as to the interpretation of scientific studies. To the contrary, the statute explicitly provides that the special master is not bound by any medical diagnosis, conclusion, judgment, test result, report, or summary, and the weight of any such evidence is to be evaluated in the light of the entire record. Section 13(b)(1). In the decision, the special master considered the studies and found the expert's opinion not to be substantiated by the medical literature cited, and, therefore, not persuasive. In the Program, weight to be given evidence in the record is a matter particularly within the responsibilities of the special master. Absent extraordinary circumstances, neither raised nor present here, the court refrains from further discussion of these arguments as to the special master's consideration of the evidence.

█ Notwithstanding the deficiencies in petitioner's motion and supporting memorandum, the special master's findings of fact and conclusion of law have been examined for compliance with the statutory standards for review. In the decision that the evidence does not support a finding that Chelsea suffered an encephalopathy, the special master considered testimony of the witnesses, subjective and objective evaluations of Chelsea found in the medical records, the autopsy which revealed no evidence of brain damage, as well as the lack of an EEG. The special master's finding that no encephalopathy occurred is not a finding which is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

The special master found that Chelsea suffered a hypotonic-hyporesponsive episode within 72 hours following administration of the DTP vaccine on December 1. With respect to this finding, the decision states:

> The hypotonia did not occur, though, until December 4, the third day following the vaccination, and it may very well have been caused by the developing pneumonia in Chelsea's lungs. The fever, drowsiness, and anorexia which Chelsea experienced during the first day or two following her vaccination are common reactions to the DTP vaccine and do not represent a shock-like state. [Footnote omitted.] The hospital diagnosis on December 3 specifically noted that Chelsea was not septic. She was, to the contrary, alert and fairly active.

Respondent construes the special master's finding that hypotonia did occur within 72 hours to mean that a Table Injury was found. Petitioner argues that once she demonstrates "injuries defined within the Vaccine Injury Table ... by a preponderance of the evidence", she is entitled to a presumption that the symptoms were caused by the vaccine. Petitioner further argues that upon establishing Chelsea "suffered the signs and symptoms listed in the Table then the issue becomes whether there is a preponderance of evidence in the record to *support an alternative cause of the injury.* 'Proving an alternative cause is the respondent's burden.'" (Citations omitted.) (Emphasis in the original.)

█ The statute, however, does not put this burden on respondent. The statute explicitly states that compensation shall be awarded under the Program to a petitioner *if the special master or court finds on the record as a whole* that the petitioner has

demonstrated by a preponderance of the evidence the matters required in the petition by Section 11(c)(1), *and* that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition. Section 13(a)(1)(A), (B). (Emphasis supplied.)

■ Petitioner seeks compensation for Chelsea's death, which followed the hypotonia. In order to be compensable, the death must be an acute complication or sequela of the hypotonia (Section 14(a)(I)(E), or Chelsea must have sustained or have had significantly aggravated the pneumonia because of the vaccine (Section 11(c)(1)(C)(ii)(I)).

The special master found that "[u]nder the Act, 'any acute complication or sequela (including death)' of a Table Injury is compensable unless there is a preponderance of the evidence that the complication or sequela is due to factors unrelated to the administration of the vaccine." The special master noted that the terms complication and sequela, although undefined in the Act, have distinct meanings. The terms are used in the disjunctive in the statute.

The special master used the following definition of sequela: " '[s]omething that follows, esp. a pathological condition *resulting* from a disease.' " In finding the death to be a temporal sequela to the hypotonic-hyporesponsive episode, the special master stated "[h]owever, the preponderance of the evidence is that her *death* was not caused by the hypotonic-hyporesponsive episode, so to that extent it was not a sequela thereto. It was a sequela temporally, but not causally." This analysis is correct, as the statute requires the sequela to be of the Table Injury.

The term complication, is defined by the special master as " 'a disease or diseases *concurrent* with another disease.' " The special master stated that the "pneumonia *might* be said to be an acute complication of whatever reaction she had to the vaccine ..." but that "[a]cute complications and sequelae of Table Injuries are not compensable if they are due to factors unrelated to the administration of the vaccine."

If the pneumonia was an acute complication of the hypotonic-hyporesponsive episode, the issue is whether there exists a preponderance of the evidence that the hypotonic-hyporesponsive collapse, not the death (which the special master found to be due to pneumonia), was due to factors unrelated to the administration of the vaccine. This is because a condition listed in the Table is a necessary predicate to compensation for an acute complication or sequela.

If the pneumonia was not an acute complication of the hypotonic-hyporesponsive episode, then the issue is whether Chelsea sustained or had had significant aggravation of the pneumonia because of the vaccine. *See* Section 11(c)(1)(C)(ii)(I).

Inasmuch as a preponderance of the evidence indicates the hypotonia to have been caused by a factor unrelated to the administration of the vaccine, and that Chelsea did not sustain or have had significant aggravation of pneumonia because of the vaccine, the decision of the special master is correct and petitioner is not entitled to compensation under the Program.

---

For the foregoing reasons, on review of the record of the proceeding, the findings of fact and conclusion of law of the special master are upheld and the special master's decision is sustained. The petition is to be dismissed. The Clerk is directed to enter judgment accordingly.