William Dawson RALEY, a minor by Ruth RALEY and William E. Raley, Parents/Legal Representatives, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–879V.

United States Claims Court.

Jan. 30, 1992.

Charles R. Grahn, Indianapolis, Ind., for petitioners.

Catharine Reeves Oster, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

OPINION

ROBINSON, Judge.

This vaccine case is before the court on a Motion for Review, filed by petitioners on September 12, 1991, challenging the special master's decision denying their claim for compensation. *Raley v. Secretary of the Dep't of Health and Human Services,* No.

90–879V, slip op., 1991 WL 165689 (Cl.Ct. August 13, 1991).

Ruth Raley and William E. Raley, as parents and legal representatives of William Dawson Raley (William), a minor, filed this petition on his behalf, seeking compensation for a vaccine-related injury under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 *et seq., codified as amended* at 42 U.S.C. §§ 300aa–1 *et seq.* (West Supp. 1991) (Vaccine Act or Act). After a hearing on July 9, 1991, the special master denied the petition on the ground that petitioners had failed to carry their burden of proof by showing by a preponderance of the evidence, that William had suffered an encephalopathy within the three-day period after administration of a DPT vaccination, as specified in the Vaccine Act or, alternatively, that William's vaccination subsequently resulted in an encephalopathy under the Vaccine Act. The issue is whether the special master erred in finding that petitioners failed to prove by a preponderance of the evidence facts sufficient to establish a table case.[1] Oral argument is deemed unnecessary. For the reasons which follow, petitioners' Motion for Review is denied, and the decision of the special master is affirmed.

## FACTS

William was a healthy, four (4) month old child until he received a second DPT vaccination on July 23, 1984. Immediately after receiving that shot, he began to cry loudly and inconsolably, refused to eat, slept fretfully and may have had some fever. Although William's behavior that day was "alarming", he improved the next day and, as found by the special master, was "his old self within three days, and for some time thereafter appeared to be fine." (Decision at 3). Sometime after the first week in August 1984, several witnesses testified that they began to notice an apparent weakness or lack of function in William's right hand or arm. However, no action was taken for several months or until

sometime in October or November 1984, when the disorder was obvious. Although a pediatrician was consulted and the parents were advised in late November 1984 that William might have cerebral palsy, he was not actually examined until January 1985, when he was taken to the Diagnostic Center at Riley's Children's Hospital, a children's specialist hospital. This examination and later events confirmed that William had developed a serious neurological problem involving a cerebral infarction. Thereafter, William had continuing neurological problems including seizures, which apparently are continuing.

At the July 9 hearing, William's father, in describing William's behavior following the July 23 shot, testified:

> I remember that he was up. He was fussy. You couldn't calm him. He wouldn't go to bed, he wouldn't go to sleep. It seems to me that he was up all night long, that he didn't sleep all night long. We couldn't console him, there was no comforting him. He was just, it wasn't his normal self. He was....

> ... He calmed down from that, probably the next day. Gradually got back to his normal self. And it was a relief. We felt like it was unusual, but it was a relief that he got over it. And there wasn't any apparent, at that time, there wasn't any apparent after affects [sic.]. He wasn't sick with anything else. He seemed to be fine after that. (Transcript at 63).

Petitioners' expert witness John Gaebler, M.D., stated that:

> I think it's quite possible that he had an encephalopathy after the July 23 immunization. (Transcript at 104).

Dr. Gaebler's testimony was not to the effect that the encephalopathy actually occurred within three days after receiving the DPT shot. To the contrary, neither Dr. Gaebler, nor any other expert medical witness testified to any degree of medical

---

**1.** Petitioners did not raise an objection to the special master's finding on actual causation of the encephalopathy by the DPT shot after the three-day time period. Therefore, the court

need not reach the issue of direct causation. *See Summar v. Secretary of the Dep't of Health and Human Services,* 24 Cl.Ct. 440 (1991).

certainty that William suffered the encephalopathy within three days of the shot.

In his decision, the special master noted Dr. Gaebler's hesitancy about placing the time of the first occurrence of the encephalopathy and concluded, on the basis of the facial insufficiency of the medical evidence, that there was not a preponderance of the evidence to support the occurrence of the encephalopathy within three days or "even two weeks of the vaccination," particularly in view of the lack of evidence of linkage between the two events and the fact that the evidence shows that William returned to normal for a period after the July 23, 1984 DPT shot. Further, the special master concluded that the evidence also precluded the notion of a gradual disorder or a disease process which erodes abilities as opposed to a traumatic or acute event as occurred in this case. Finally, the special master concluded that while the evidence does not utterly preclude a DPT reaction, "it fails to establish it in a way that the statute requires, and it points much more strongly to a causally unrelated cerebral event in early August.

Petitioners' Motion for Review filed September 12, 1991 argues that petitioners have proven entitlement to compensation by a preponderance of the evidence. In support of that argument, petitioners point to the special master's finding that after the July 23 DPT shot William had an encephalopathy, (Decision at 4) and to the evidence of William's inconsolable crying and unusual screaming for several hours after the shot. They conclude that such crying and screaming were the first symptoms of the encephalopathy and establish an onset date within the requisite three (3) days of the shot, and also, that respondent failed to prove an alternative cause. Thus, petitioners argue that the special master erred in interpreting and applying the law to these facts, and move the court for an order setting aside the special master's finding that petitioner is not entitled to compensation.

Respondent, in its Memorandum Response to Petitioners' Motion for Review, filed October 15, 1991, states that there is substantial evidence in the record to support the special master's decision denying compensation, and that petitioners failed to establish the basic factual predicate for compensation under the Vaccine Act. Therefore, respondent contends that petitioners have failed to show that a table injury occurred, that there is no issue before the court on appeal with respect to causation because petitioners are pursuing their case as an on-table claim, and that, accordingly, this court must find that the special master's decision of August 13, 1991 was not arbitrary, capricious, or an abuse of discretion or contrary to law. Thus, respondent requests that the special master's decision be sustained.

## DISCUSSION

This court, since the 1989 amendment to the 1986 Vaccine Act, is required to apply a narrow standard of review. It can only set aside a special master's findings of fact and conclusions of law if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Johnston v. Secretary of HHS*, 22 Cl.Ct. 75, 76 (1990). In sum, this means that in order to overturn the decision below, this court must find that the special master must have committed a clear error of judgment; relied upon factors which Congress had not intended to be considered; failed to consider important aspects of a legal problem; or offered a rationale for his decision that runs counter to the weight of evidence, or is so implausible that it could not be ascribed to a difference in view or the product of the special master's expertise. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) (citations omitted), *S & G Excavating, Inc. v. United States*, 15 Cl.Ct. 157, 162 (1988).

Petitioners must establish that the special master's decision was unsupported by the record. It is of little import that there may be evidence of record from which conclusions contrary to those reached by the special master could have been reached. *Inwood Laboratories, Inc.*

v. *Ives Laboratories, Inc.,* 456 U.S. 844, 857–58, 102 S.Ct. 2182, 2190–91, 72 L.Ed.2d 606 (1981).

In *Munn v. Secretary of HHS,* 21 Cl.Ct. 345, 348 (1990), the court carefully articulated the arbitrary and capricious standard, to which this court must adhere in this case, as follows:

> In its review, the Claims Court may not parse the record and substitute what would have been its judgment had it initially decided the matter. The Claims Court may not substitute its own judgment for that of the special master. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Where there is conflicting evidence, appropriate deference is given the special master's findings of fact. *Hambsch v. Dept. of Treasury,* 796 F.2d 430, 436 (Fed.Cir. 1986).

The court continued:

> Findings of fact made by the special master are reviewed under a standard that is narrower than the "clearly erroneous" standard provided in RUSCC 52(a). Legal concepts developed in application of the "substantial evidence" standard to issues of fact do not apply in a review of a special master's decision. If the evidence in the record has been considered, and such evidence provides a reasonable basis for the special master's finding, the special master's findings of fact may not be set aside.

*Munn v. Secretary of HHS,* 21 Cl.Ct. 345, 348 (1990).

■ Finally, the standard of review of a special master's decision was further defined by the Vaccine Act's legislative history which makes clear that Congress intended that this court should only grant relief upon review "under very limited circumstances." H.R.Conf.Rep. No. 101–386. 101st Cong., 1st Sess. at 517, *reprinted* in 1989 U.S.Code Cong. & Admin.News 1906, 3112, 3120. In short, if this court determines that the special master acted rationally, considered all relevant factors and made no clear error of judgment, then it must affirm the special master's decision.

*Hyundai Electronics v. United States Intern. Trade Comm'n,* 899 F.2d 1204, 1209 (Fed.Cir.1990).

■ The Qualifications and Aids to Interpretation to the Vaccine Injury Table (42 U.S.C. § 300aa–14(b)(3)(A)), (West Supp. 1991) defines encephalopathy as "any significant acquired abnormality of, or injury to, or impairment of function of the brain", and states:

> Among the frequent manifestations of encephalopathy are focal and diffuse neurologic signs, increased intercranial pressure, or changes lasting at least 6 hours in level of consciousness, with or without convulsions. The neurological signs and symptoms of encephalopathy may be temporary with complete recovery, or may result in various degrees of permanent impairment. Signs and symptoms such as high pitched and unusual screaming, persistent unconsolable crying, and bulging fontanel are compatible with an encephalopathy, *but in and of themselves are not conclusive evidence of encephalopathy.* Encephalopathy usually can be documented by slow wave activity on a electroencephalogram. [Emphasis added.]

In this case, based on all of the evidence presented, the special master concluded that petitioners had failed to prove that William developed an encephalopathy within three days from the vaccination. He also determined that there was not a preponderance of the evidence which supported the occurrence of an encephalopathy within the on-table period. In so doing, he relied upon the refusal or inability of Dr. Gaebler to state clearly and unequivocally as a medical expert that in his opinion the onset of the encephalopathy occurred within the three day period following administration of the shot and the father's honest and straightforward statement that William appeared to have recovered from the shot by July 24, 1984. In point, "[h]e calmed down * * * the next day [and] [g]radually got back to his normal self." He was "over it" with "no after affects [sic.]" and "seemed to be fine after that." (Transcript at 63–64). The special master's

reliance was not misplaced, but, under the circumstances, quite proper. *Mobley v. Secretary of HHS*, 22 Cl.Ct. 423 (1991).

Basically, petitioners have attempted to satisfy their burden of proving a table injury in the case at bar by showing only that William exhibited inconsolable crying within a period of hours of his second DPT shot. The special master determined that this evidence simply was insufficient to meet petitioners' burden of proving by a preponderance of the evidence that an encephalopathy had occurred within the required three-day period.

It is not for this court to decide whether it would have reached the same result as did the special master. Its only obligation on review is to determine whether the special master acted rationally by considering all relevant factors and made no clear errors in judgment. This court opines that he did because he applied the proper standard of proof, he considered only relevant factors, and he fairly, even sympathetically, evaluated the testimony, both lay and expert, submitted by petitioners.

## CONCLUSION

For the reasons stated above, petitioners have not shown that the decision of the special master in denying compensation in this case was arbitrary, capricious, an abuse of discretion or otherwise, not in accordance with the law. Clearly, there is sufficient evidence of record to support his denial of compensation. Therefore, petitioners' motion for review is denied, and the decision of the special master is affirmed. The Clerk of the Court shall enter judgment dismissing the petitioners' motion. Petitioners should refer to Appendix J of the Rules regarding filing for attorneys' fees and costs.